1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   CHAI JOHNNY XIONG,                     ) Case No.: 1:13-cv-01161 - JLT
                                            )
12              Plaintiff,                  ) ORDER DIRECTING ENTRY OF JUDGMENT IN
                                            ) FAVOR OF DEFENDANT CAROLYN COLVIN,
13        v.                                ) ACTING COMMISSIONER OF SOCIAL
                                            ) SECURITY, AND AGAINST PLAINTIFF CHAI
14   CAROLYN W. COLVIN,                     ) JOHNNY XIONG
     Acting Commissioner of Social Security,)
15                                          )
                                            ) (Doc. 1)
16              Defendant.                  )
     _____)
17

18          Chai Johnny Xiong ("Plaintiff") asserts he is entitled to supplemental security income under

19   Title XVI of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in

20   relying on the testimony of the vocational expert to find Plaintiff was able to perform work in the

21   national economy and in assessing the credibility of his subjective complaints.  For the reasons set

22   forth below, the ALJ's decision is **AFFIRMED**.

23                         **PROCEDURAL HISTORY**

24          Plaintiff filed his application for supplemental security income on August 6, 2009, alleging

25   disability beginning January 1, 2001.  (Doc. 9-3 at 17.) The Social Security Administration denied her

26   claims initially and upon reconsideration.  (Doc. 9-5 at 2-8, 12-16.)  After requesting a hearing,

27   Plaintiff testified before an administrative law judge ("ALJ") on December 9, 2011.  (Doc. 9-3 at 31.)

28   The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order

                                            1

1    denying benefits on December 20, 2011.  (*Id.* at 14-24.)  Plaintiff requested the Appeals Council review

2    the decision, asserting the ALJ's decision was "not based on the substantial medical evidence in the

3    file."  (*Id.* at 13.)  The Appeals Council denied Plaintiff's request for review of the decision on April

4    11, 2013.  (*Id.* at 4-6.)  Thus, the ALJ's determination became the final decision of the Commissioner

5    of Social Security ("Commissioner").

6    ## STANDARD OF REVIEW

7        District courts have a limited scope of judicial review for disability claims after a decision by

8    the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

9    such as whether a claimant was disabled, the Court must determine whether the Commissioner's

10   decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

11   ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

12   standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

13   *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

14       Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

15   reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

16   389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

17   must be considered, because "[t]he court must consider both evidence that supports and evidence that

18   detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

19   ## DISABILITY BENEFITS

20       To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

21   engage in substantial gainful activity due to a medically determinable physical or mental impairment

22   that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

23   § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

24       his physical or mental impairment or impairments are of such severity that he is not
         only unable to do his previous work, but cannot, considering his age, education, and
25       work experience, engage in any other kind of substantial gainful work which exists in
         the national economy, regardless of whether such work exists in the immediate area in
26       which he lives, or whether a specific job vacancy exists for him, or whether he would
         be hired if he applied for work.

27

28   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and hearing testimony.  20 C.F.R. §§ 404.1527, 416.927.

### A.   Medical Evidence

Dr. Richard Engeln conducted a psychological evaluation on April 24, 2008.  (Doc. 8-9 at 20-23.) Dr. Engeln administered the following psychosocial tests: Wechsler Adult Intelligence Scale III, Wechsler Memory Scale III, Wide Range Achievement Test III, Bender-Gestalt Test II, and Mental Status Exam.  (*Id.*) Dr. Engeln noted Plaintiff used an interpreter because his best language was Hmong, but he "presented with interactive language skills in English." (*Id.*) His mother reported Plaintiff had difficulties learning in school and had been in special education classes since 2002. (*Id.* at 21.) Dr. Engeln observed Plaintiff "was oppositional, passive-aggressive, [and] refused to demonstrate any competency." (*Id.*) He opined Plaintiff "did not appear to present with any processing deficits either auditorially or visually," and his "[e]ffort was not full." (*Id.*) Further, Dr. Engeln noted Plaintiff "would not cooperate with evaluation procedures." (*Id.* at 23.) According to Dr. Engeln, Plaintiff's scores on the psychological tests "appeared to be underestimates of his ability level." (*Id.* at 22.) Dr. Engeln reported that "because of his exaggeration, [he] was unable to say [Plaintiff's] abilities fall outside the normal range." (*Id.* at 23.)

Dr. Steven Swanson performed a psychological assessment on January 15, 2010.  (Doc. 9-8 at 25- 30.) Dr. Swanson noted Plaintiff had graduated from McLane High School in 2009, where "he was

awarded a certificate of completion rather than a high school diploma." (*Id.* at 25.)  Plaintiff reported that he planned to attend college, "enjoy[ed] playing video games and watching television," and he was "independently able to complete all activities of daily living." (*Id.* at 26.)  Dr. Swanson observed Plaintiff "was fully-oriented to person, time, place and situation," and his "[f]orm and content of thought were within normal limits." (*Id.* at 27.)  Further, he found Plaintiff's "[s]hort-term, recent, and remote memories were within normal limits based upon memory of three words (with and without time delay), what the claimant had for dinner the night before, what school he attended in the third grade, the names of previous U.S. presidents, and the like." (*Id.*)  Dr. Swanson concluded:

> [Plaintiff] is judged able to maintain concentration or relate appropriately to others in a job setting.  He would be able to handle funds in his own best interests.  He is expected to understand, carry out, and remember simple instructions.  He is judged as able to respond appropriately to usual work situations, such as attendance, safety, and the like.  Changes in routine would not be very problematic for him.  Difficulties in maintaining social relationships do not appear to be present.

(*Id.* at 29.)  Further, Dr. Swanson opined Plaintiff's "[m]ental and emotional functioning fall within normal limits." (*Id.*)

On February 24, 2010, Dr. Biala completed a psychiatric review technique form and mental residual functional capacity assessment. (Doc. 9-8 at 30-46.)  Dr. Biala noted that Plaintiff's school reported that he "was not in special ed." (*Id.* at 40.)  Dr. Biala opined Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties with concentration, persistence, or pace. (*Id.* at 38.)  Further, Dr. Biala found Plaintiff was "moderately limited" with the ability to understand, remember, and carry out detailed instructions, but "not significantly limited" with the ability to understand, remember, and carry out very short and simple instructions. (*Id.* at 41.)  According to Dr. Biala, Plaintiff was "not significantly limited" in all areas of social interaction and adaptation. (*Id.* at 42.)  Dr. Biala concluded Plaintiff was capable of performing simple, repetitive tasks. (*Id.* at 46.)

Dr. Archimedes Garcia reviewed the record, and affirmed the assessment that Plaintiff was able to perform simple, repetitive tasks on August 30, 2010. (Doc. 9-8 at 47-48.)

Dr. Maximo Parayno conducted "a psychiatric evaluation to assess [Plaintiff's] credibility for benefits" on October 10, 2011. (Doc. 9-8 at 70.)  Plaintiff reported suffering from "[d]epression, poor

memory, [and] in ability to learn." (*Id.*) Plaintiff told Dr. Parayno that "he had developed depression after the death of his father in 1999," that he "had impaired memory, concentration and attention span and was placed in a Special Education Program." (*Id.*)  He reported that he did not do chores at home, and "had to be reminded to take a shower." (*Id.* at 72.)  Dr. Parayno observed Plaintiff "was alert but with limited eye contact," "[h]is affect was blunted and his mood was depressed." (*Id.* at 71.)  Dr. Parayno noted Plaintiff "did not know the day of the week, month, or year." (*Id.*)  Further, Plaintiff "did not know his home address, phone number and even his own date of birth." (*Id.*)  Plaintiff "knew the names of his two sisters . . . but did not know the names of his 2 brothers." (*Id.*)  When Dr. Parayno tested Plaintiff's memory by giving him five items to remember, Plaintiff "did not respond at all." (*Id.*)  Dr. Parayno concluded his "judgment and insight [were] definitely impaired." (*Id.*)  According to Dr. Parayno, "Given [Plaintiff's] learning disability and inability to communicate adequately and intelligently, he [is] unable to engage in any substantial gainful activity." (*Id.* at 72.)

**B.    Administrative Hearing**

   1.    Plaintiff's testimony

Plaintiff appeared at the hearing on December 9, 2011, represented by counsel and assisted by a Hmong interpreter.  (Doc. 9-3 at 31.)  He stated that he was born on September 9, 1990, and was 21 years old.  (*Id.* at 32.)  Plaintiff reported he lived with his mother and 18-year-old sister.  (*Id.* at 33.)

He testified that he had completed the twelfth grade and obtained a certificate of completion from his high school.  (Doc. 9-3 at 34.)  Plaintiff reported he took special education classes for four years, but took physical education with other students.  (*Id.*)  He said he could read and write "[a] little bit" in English.  (*Id.* at 34-35.)  Plaintiff stated he could not write a one-page letter, or take a message if his someone called on the phone.  (*Id.* at 35.)  He reported he was able to add, subtract, multiply, and divide.  (*Id.* at 36.)

Plaintiff said he went to a doctor about once a month for depression.  (Doc. 9-3 at 35-36.)  He said that he had depression because he did not "know how to read, know how to write." (*Id.* at 36.)  Plaintiff said he felt depressed one or two days a week, and he spent those days "[w]atching TV or playing games, for "[t]here, four hours" without a break.  (*Id.* at 37-38.)  He said he took medication every day to "[c]alm down" from anger, and did not have any side effects.  (*Id.* at 37, 39.)  He reported

that when he was on the medication, his depression was "gone completely." (*Id.* at 39.) Plaintiff said he would "[g]o to sleep" when angry. (*Id.* at 38.)

He testified that he did not keep up with personal hygiene, but did not know why. (Doc. 9-3 at 39.) Further, Plaintiff reported that he did not cook or clean because he did not "want to do it." (*Id.* at 40.) However, he was able to make simple meals such as a sandwich or bowl of cereal, and wash his own dishes. (*Id.*) Plaintiff said he "sometimes" helped grocery shopping. (*Id.*)

Plaintiff testified that he had friends, but did not seem them very often. (Doc. 9-3 at 40.) He said he did not have a driver's license and did not want to get one because he was afraid to drive. (*Id.* at 33.) He reported that when he needed to go somewhere, he walked. (*Id.* at 33-34.) Plaintiff stated that he had never tried to find a job. (*Id.* at 35.)

2.     Vocational Expert

The ALJ asked Judith Najarian, a vocational expert ("VE"), consider a hypothetical "worker of [Plaintiff's] age, education, and work experience," who was able to "perform simple, repetitive tasks." (Doc. 9-3 at 42.) The VE opined that there were jobs available for such a person, such as "tin stacker, *DOT*[1] 922.687-098; box bender, *DOT* 641.687-010; and packer, *DOT* 920.687-094. (*Id.* at 42-43.) The VE explained that the ALJ did not give any physical limitations, and the jobs identified ranged from medium to heavy. (*Id.*) According to the VE, there were 9,110 tin stacker jobs; 9,357 box bender jobs; and 2,238 packing jobs in the state of California. (*Id.* at 43.)

Next, the ALJ asked the VE to consider an individual who "cannot maintain attention and concentration through an 8-hour work day, or a 40-hour work week, and cannot maintain a competitive pace throughout an 8-hour day." (Doc. 9-3 at 43.) The VE opined such a worker could not perform any jobs in the national economy. (*Id.*)

The VE stated that her testimony was "consistent with the *Dictionary of Occupational Titles* and with selective characteristics of occupations." (Doc. 9-3 at 44.) Plaintiff's counsel declined to ask the VE any questions, and did not object to the testimony. (*See id.* at 43-44.)

---

[1] *The Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

C.    **The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff did not engage in substantial gainful activity after the application date of August 6, 2009.  (Doc. 9-3 at 19.)  Second, the ALJ found Plaintiff's severe impairments included: "borderline intellectual functioning and depressive disorder."  (*Id.*)  Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing.  (*Id.* at 19-20.)

The ALJ found Plaintiff had the residual functional capacity ("RFC") "to work at all exertional levels, but can perform only simple and repetitive tasks." (Doc. 9-3 at 20.) With this RFC, the ALJ determined Plaintiff was able "to perform jobs that exist in significant numbers in the national economy," such as tin stacker, box bender, and packer.  (*Id.* at 23.)  Therefore the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 24.)

## DISCUSSION AND ANALYSIS

According to Plaintiff, the ALJ erred in assessing the credibility of his subjective complaints, and relying on the testimony of the vocational expert to determine that there a significant number of jobs available that Plaintiff can perform.  (Doc. 13 at 5-19.)  On the other hand, Defendant asserts that the ALJ's decision should be affirmed because "the ALJ's findings are supported by substantial evidence and free from reversible legal error."  (Doc. 14 at 10.)

A.    **Evaluation of Plaintiff's Credibility**

Plaintiff argues that "the ALJ improperly assessed his subjective symptom testimony in assessing the residual function capacity." (Doc. 13 at 11.)  When evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, when there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting her subjective complaints.  *Id.* at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective

medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ determined Plaintiff's "medically determinable impairments can reasonably be expected to cause the alleged symptoms." (Doc. 9-3 at 21.) However, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of [his] symptoms are not credible ..." (*Id.*) Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding his limitations.

Plaintiff asserts, "[T]he ALJ did not properly conduct the mandated second step of the two-step analysis," and failed to articulate clear and convincing reasons for rejecting his credibility. (Doc. 13 at 12.) According to Plaintiff, "the ALJ decision is void of any sufficient rationale at all as to why the ALJ ignored and disregards Mr. Xiong's testimony." (*Id.*) Plaintiff contends "it also appears that the ALJ simply rejects [his] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence," but "a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." (*Id.* at 14, citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)).

On the other hand, Defendant contends that the ALJ's credibility determination was proper, and "Plaintiff fails entirely to specify what portion(s) of his testimony, if any, conflict with the ALJ's RFC finding." (Doc. 14 at 7.) Indeed, Plaintiff does not identify any limitations he believes should have been incorporated by the ALJ into the RFC, or what portions of his testimony should have been adopted by the ALJ. Regardless, the ALJ considered several factors to support his determination that Plaintiff's "allegations are not fully credible," including the treatment received and the objective medical evidence. (Doc. 9-3 at 22.) In addition, the ALJ noted Plaintiff had "no past relevant work." (*Id.* at 23.) Each of these factors may support an adverse credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### 1.   Treatment received

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). Further, the Ninth Circuit has determined that an "ALJ is permitted to consider lack of treatment in his credibility determination."

*Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ's consideration of the claimant's failure to see treatment for a three or four month period was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

Here, the ALJ observed Plaintiff received a referral in May 2008 "for mental health services for learning disability . . . but Mr. Xiong did not receive follow-up treatment or evaluation." (Doc. 9-3 at 21.)  In addition, the ALJ found Plaintiff had "no subsequent treatment" in 2009 after a physician noted "a need to rule-out Mr. Xiong as having depression and treatment."  (*Id.*)  Although Plaintiff received a prescription for Prozac and Seroquel, the ALJ found Plaintiff "ha[d] not received specialized mental health treatment until recently and that treatment does not support Mr. Xiong's allegations."  (*Id.* at 22.)  As noted by the ALJ, Plaintiff had "only seven appointments" with a psychiatrist between May 2008 and August 2011. (*Id.* at 21-22.) Because Plaintiff received only limited treatment for the alleged severe impairment, the treatment received—or lack thereof—supports the adverse credibility determination. *See Burch v,* 400 F.3d at 681; *Meanel*, 172 F.3d at 1114.

        2.     Objective medical evidence

As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").  Here, the ALJ's credibility determination did not rest solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff.  Thus, objective medical evidence was a relevant factor in evaluating Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not

sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible").

The ALJ found that "[t]he medical record reflects essentially normal mental status examinations from August, 2010, to August, 2011, with normal mood and no auditory or visual hallucinations." (Doc. 9-3 at 22.)  The ALJ noted that Drs. Engeln and Swanson "tested Mr. Xiong extensively" and found no mental illness, though he had borderline functioning.  (*Id.* at 21-22.)  Further, the ALJ noted that based upon the examinations, "both concluded Mr. Ziong could perform simple repetitive tasks." (*Id.*)  Because the ALJ carried his burden to identify the medical evidence undermining Plaintiff's complaints, the objective medical record supports the ALJ's adverse credibility determination.

### 3.    Work history

The Ninth Circuit determined that a claimant's poor work history is a relevant factor in a credibility determination. *Thomas*, 278 F.3d at 959.  In *Thomas*, the ALJ found the claimant "show[ed] little propensity to work in her lifetime" given her "extremely poor work history." *Id.*, 278 F.3d at 959. The Court observed the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability in June of 1993."  *Id.* Accordingly, the Court found her poor history was a "specific, clear and convincing reason[]' for discounting her pain testimony. *Id.*

Here, the ALJ observed Plaintiff had "no past relevant work." (Doc. 9-3 at 23.)  Indeed, Plaintiff testified that he had never tried to find a job.  (*Id.* at 35.)  Accordingly, Plaintiff's poor work history supports the adverse credibility determination.

## B.    Vocational Expert Testimony

Plaintiff asserts the ALJ erred in relying upon the testimony of the vocational expert to determine that Plaintiff is able to perform work existing in significant numbers in the economy.  (Doc. 13 at 5-10.)  An ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his

or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (explaining the Commissioner may establish a claimant can perform work in "significant numbers" through the testimony of a vocational expert).  Here, the ALJ called a vocational expert to determine whether Plaintiff could perform a significant number of jobs because his "ability to perform work at all exertional levels is compromised by nonexertional limitations.  (Doc. 9-3 at 23.)

    Here, the ALJ asked the vocational expert to consider an individual the same age as Plaintiff, with the same education and work background, who was able to "perform simple, repetitive tasks." (Doc. 9-3 at 42.)  The vocational expert noted that the ALJ identify any physical limitations, and opined such a person could perform work such as tin stacker, box bender, and packer.  (*Id.* at 42-43.)  Notably, Plaintiff does not argue the question posed by the ALJ was unsupported by the record, or that he is incapable of performing the jobs identified by the vocational expert.  Rather, Plaintiff urges the Court to consider job data from the Bureau of Labor Statistics regarding the number of jobs available for the positions to find that the vocational expert erred and that there are not a significant number of jobs. (Doc. 13 at 6-8.)  According to Plaintiff, the testimony of the vocational expert cannot be substantial evidence because "[t]he ALJ did not ask and the vocational expert did not volunteer on what methodology the vocational expert based her testimony or what data sources were used."  (*Id.* at 10.)

    1.    Plaintiff has waived any challenge to the vocational expert's testimony.

    At the hearing, Plaintiff was represented by counsel, but did not inquire as to the methodology in calculating the number of jobs available did not challenge the job numbers identified by the vocational expert.  Further, this issue was not presented to the Appeals Council in the request for review.  (*See* Doc. 9-3 at 13.)  The Ninth Circuit has determined that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  Thus, the Court has declined to address a claimant's "argument that the ALJ erred in relying on the vocational expert's testimony as to the number of jobs available without establishing a foundation for that testimony" when the issue was "not raised and preserved for appeal at the hearing."  *Robbins v. Soc. Sec. Admin.*, 466

F.3d 880, 886 n.3 (9th Cir. 2006.)  Accordingly, Plaintiff waived any challenge to the job data identified by the vocational expert.

    2.    The vocational expert is not required to explain the methodology

    Even assuming Plaintiff had not waived the right to challenge the job data provided by the vocational expert, his argument that the decision cannot be substantial evidence without an explanation as to the method used to calculate the number of jobs available is unpersuasive.  The Ninth Circuit has determined that a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Accordingly, courts have determined that a vocational expert is *not* required to explain the methodology behind calculating the number of jobs available.  *See, e.g.*, *Lang v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 48558 at *12-14 (E.D. Cal. Apr. 8, 2014) (rejecting the plaintiff's argument that because "the VE did not describe how he calculated the number of jobs existing in the national and regional economy" and "the numbers provided by the VE are not consistent with the data with the Bureau of Labor Statistics," the testimony was not substantial evidence); *Vera v. Colvin*, 2013 U.S. Dist. LEXIS 165983 at *76 (C.D. Cal. Nov. 21, 2013) ("the VE was not obligated to explain his methodology for determining the number of available jobs because his professional expertise, which Plaintiff specifically acknowledged and did not challenge at the hearing [citation], was a sufficient foundation for his testimony"); *McCaleb v. Colvin*, 2013 U.S. Dist. LEXIS 53757 at *13-15 (C.D. Cal. Apr. 12, 2031) (rejecting the argument that the vocational expert's testimony was not substantial evidence "[b]ecause the VE did not identify the source of her jobs data or describe her methodology," and the job numbers varied "significantly" from data provided by the plaintiff).  Therefore, neither the vocational expert nor the ALJ had a burden to explain the methodology in calculating the number of jobs available.

    3.    The vocational expert identified a significant number of jobs.

    According to the vocational expedrt, there were 9,110 tin stacker jobs; 9,357 box bender jobs; and 2,238 packing jobs in the state of California.  (Doc. 9-3 at 43.) The Ninth Circuit "has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'"  *Barker v. Sec'y of Health & Human Servs*, 882 F.2d 1474, 1478 (9th Cir. 1989).  However, the Court has

determined more than 1,000 jobs satisfies the requirement that there be a "significant number" of positions in the regional economy. *See, e.g., Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (finding the ALJ "properly concluded that there was a significant number of… jobs in the local area," where the ALJ found "there were between 1,000 and 1,500" regional positions); *Barker*, 882 F.3d at 1479 (finding 1,266 regional positions sufficient); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding 1,300 regional positions satisfied the "significant number" requirement).  Consequently, the vocational expert's testimony supports the conclusion that Plaintiff may perform work existing in a significant number.

## CONCLUSION AND ORDER

For the foregoing reasons, the ALJ carried his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958.  In addition, Plaintiff waived the right to challenge the vocational expert's job data.  Regardless, the ALJ did not err in in relying upon the vocational expert's testimony to determine that Plaintiff can perform jobs in the regional and local economy, and that such work exists in a significant number.  Because the ALJ applied the proper legal standards, his conclusion that Plaintiff is not disabled as defined by the Social Security Act must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The decision of the Commissioner of Social Security is **AFFIRMED**; and

2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Chai Xiong.

IT IS SO ORDERED.

Dated:   __July 26, 2014__                                    _____/s/ **Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE